UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| V.  § | 5:06-CR-27 |
| § | |
| SALWILLEL THOMAS FIELDS § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

**CAME ON TO BE CONSIDERED THIS DAY** Defendant's Motion to Suppress (Docket Entry # 18). The Court, after reviewing the motion, the response, and hearing arguments of counsel, recommends the motion be **DENIED**.

**I. Procedural Background**

Salwillel Fields ("Defendant") is charged in a four count indictment with the offenses of Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1), and Carrying a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1). These charges arose from evidence seized upon the execution of a search warrant on February 28, 2005, in Bowie County, Texas. Defendant has filed a motion to suppress. The Court conducted a hearing on the motion on May 16, 2007.

**II. Factual Background**

On February 17, 2005, Investigator Lance Hall received information from Texas Ranger Jay Womack that Defendant was residing at 749 McAuthor St., Wake Village, Bowie County, Texas. (Bowie County Sheriff Department's Supplemental Report at pg. 1). Upon further investigation,

Investigator Hall also learned that Defendant was wanted on various drug and weapon indictments out of Montgomery County, Tennessee. (*Id.*). Additionally, Defendant's criminal history report revealed several felony convictions. (*Id.*).

Investigator Hall and Ranger Womack conducted surveillance on the residence for several days. (*Id.*). During this surveillance, Investigator Hall confirmed Defendant's identity, conducted a registration check on the cars that were located at the residence, and confirmed that the cars were in fact registered to Defendant. (*Id.*). On one occasion, Hall observed two males standing in the front yard of the residence. Hall recognized one of the men as Kelvin Anderson, who is "a known cocaine dealer from the Texarkana area." (*Id.*). Hall observed Defendant coming and going in and out of the residence. (*Id.* at pg. 2).

As a result of his surveillance, combined with the fact that Defendant was a fugitive, which is a felony in the state of Texas, on February 27, 2005, Hall prepared a search and arrest warrant for the residence. (*Id.*). Hall presented the search warrant to the 102nd District Judge John Miller for issuance; Judge Miller examined and signed the warrant. (*Id.*).

On February 28, 2005, the search warrant was executed at the residence beginning at approximately 6:43 a.m. (*Id.*). During the execution of the warrant, Defendant was read his *Miranda* warnings and advised Ranger Womack that there was a 12 gauge street sweeper shotgun located in the bathroom of the residence. Defendant further stated there was cocaine in the master bedroom and in a vehicle located outside the residence. (*Id.*).

Hall located the shotgun in the bathroom and discovered that it was fully loaded. "A NCIC & TCIC check revealed that this was a stolen firearm reported by the Cass County, Sheriff Office." (*Id.*). Hall then located in the top drawer of a dresser in the master bedroom a small baggie of

suspected cocaine, a plastic baggie of suspected green leafy substance believed to be marijuana, a medium size baggie containing suspected cocaine, a telephone bill in Defendant's name, a cutting board that had a white powdery substance believed to be cocaine on the board, miscellaneous papers, and a Texas fishing license. (*Id.*). Hall then located on the top shelf of the master bedroom closet a large plastic baggie containing a white powdery substance believed to be cocaine. (*Id.*). Ranger Womack located inside a coat pocket inside the master bedroom closet $3000 in United States currency which was taken and turned over to Captain Hall. (*Id.*). Investigator Palmore located in the purse of Ms. Fields a small plastic baggie containing suspected cocaine and a small plastic baggie containing a green leafy substance believed to be marijuana. (*Id.* at pg. 3).

Hall then searched the 1997 Pontiac vehicle that was located outside the residence and found in the glove compartment approximately $4000 in United States currency and approximately two grams of crack cocaine inside a metal container attached to the key ring. The key to the vehicle and a key to a local storage building were attached to the key ring. (*Id.*). Ranger Womack obtained consent to search from Defendant regarding two storage units. During the search of the storage units, Ranger Womack located a black satchel that contained a large amount of a white powdery substance believed to be cocaine. (*Id.*). All items were transported to the Bowie County Sheriff Office and placed in evidence. (*Id.*).

Defendant was arrested on the Tennessee charges. While being interviewed Defendant agreed to cooperate with authorities and travel back to Tennessee. (*Id.*). Defendant was not charged at that time on the items seized. (*Id.*). On August 23, 2005, Hall received the lab analysis from the Texas Department of Public Safety. The report revealed 423.65 grams of cocaine and 217.50 grams of marijuana. (*Id.*).

### III.  Defendant's Motion to Suppress

Defendant contends the search in this case is unconstitutional and should therefore be suppressed. Defendant alleges the affidavit in support of the warrant is not sufficient because it lacks information or direct knowledge of any acts or activities of Defendant or others at the residence. Defendant contends the warrant was not supported by probable cause because there was no information or allegation of any wrongdoing at the place to be searched or any information concerning contraband therein.

According to Defendant, the only <u>facts</u> contained in the affidavit are contained on page five, and they are minimal, limited to the fact that Defendant was seen at the residence and he had an arrest warrant from Tennessee.  Defendant asserts pages six and seven of the affidavit contain generalizations of Hall from his experience in other cases as opposed to facts regarding this particular case.   Defendant further asserts the good faith exception does not apply.

### IV.  Hearing Testimony

Hall testified at the hearing.  Hall stated he received Defendant's address from Texas Ranger Jay Womack and performed surveillance for approximately five days in February of 2005.  Hall also received information from Tennessee that there were six or seven warrants based on felony indictments for Defendant. Hall completed a seven page affidavit for search warrant. Once receiving the search warrant, Hall and Womack entered Defendant's residence.  Tennessee officers were down the street on the day the officers entered the residence.

Hall testified that when he entered the house, Defendant was secured in the master bedroom, the residence was cleared, and Defendant was given his *Miranda* warning.  Hall testified that after the *Miranda* warning was given, Defendant waived the *Miranda* rights by choosing to describe the

4

shotgun weapon located in the bathroom and drugs located in the master bedroom. According to Hall, Defendant basically answered the officers' questions, identifying the weapon and the location of drugs. Inside a key ring, the officers located several rocks of cocaine. Paperwork was also found in the residence regarding storage units. Hall testified Defendant was later asked about the storage units, and Defendant agreed in writing to allow a search of the storage units. Hall was present when Defendant signed the consent to search form. After obtaining Defendant's consent, Ranger Womack and Lt. Larry Parker searched the storage building.

Womack also testified at the hearing as follows. Womack had also conducted surveillance on Defendant's residence. The officers went into the residence relying on the arrest warrants. When the officers entered the house, the officers first secured the house. Defendant was secured as was another couple. Womack read Defendant his *Miranda* rights. The officers told Defendant they had a search warrant for the house and asked Defendant if there was anything he wanted to tell them before they started the search. According to Womack, Defendant then waived those *Miranda* rights by disclosing the location of the shotgun, some cocaine, and some money in the car. Womack did not ask Defendant to sign a waiver of those rights. Later, Defendant signed a consent to search form regarding a storage building. Womack was present when Defendant signed this form. According to Womack, Defendant showed the officers which key on the key ring would unlock the storage unit.

## V. Discussion

**A.**     *Maryland v. Buie*

The Court first considers whether, as urged by the Government, a search warrant was even necessary in this case. Under *Maryland v. Buie*, 494 U.S. 325 (1990), police executing an arrest warrant in a residence may search rooms other than those where the suspect is found if such a

"protective sweep" is limited in time and scope to the need for protection. In *Buie*, two men, one wearing a red running suit, committed armed robbery. *Id.* at 328. Later that day, an arrest warrant was issued for Buie and his suspected accomplice. *Id.* Buie's house was placed under police surveillance. *Id.* No search warrant was ever issued.

Two days later, the police executed the arrest warrant for Buie. *Id.* The police "first had a police department secretary telephone Buie's house to verify that he was home. The secretary spoke to a female first, then to Buie himself." *Id.* The police proceeded to Buie's house, entered it, and looked for Buie on the first and second floors. *Id.* Then Officer Rozar went to the top of the basement stairs and shouted into the basement, ordering anyone down there to come out. *Id.* When a voice asked who was calling, the officer announced three times "this is the police, show me your hands." *Id.* Eventually, a pair of hands appeared at the bottom of the stairs and

> Buie emerged from the basement. He was arrested, searched and handcuffed by Rozar. Thereafter, Detective Joseph Frolich entered the basement 'in case there was someone else' down there. He noticed a red running suit lying in plain view on a stack of clothing and seized it."

*Id.*

The Maryland Court of Appeals reversed Buie's robbery conviction, holding the trial court erred by denying his motion to suppress the running suit because Frolich's sweep of the basement was supported neither by a search warrant nor by probable cause to believe that a serious and demonstrable potentiality for danger existed there. *Buie v. State*, 314 Md. 151, 550 A.2d 79 (1988). The Supreme Court vacated and remanded, holding that reasonable suspicion sufficed and that probable cause was not required for a protective sweep. *Maryland v. Buie*, 494 U.S. at 327.

The Fifth Circuit reads *Buie* very broadly. According to the Fifth Circuit, *"Buie* makes clear

6

that neither the arrest nor the warrant sufficed to justify the sweep there, which occurred after the arrest and was of an area of the home well removed from the place of arrest, an area in which the defendant retained a Fourth Amendment protected privacy interest." *United States v. Gould*, 364 F.3d 578 (5th Cir. 2004), *cert. denied*, 543 U.S. 955 (2004). The Fifth Circuit also explains in *Gould* that *Buie* recognizes another special category of permissible sweep, "one *without* even reasonable suspicion, of 'closets and other spaces *immediately adjoining* the place of arrest from within which an attack could be immediately launched." *Id.* at 583 n. 1, *quoting Buie*, 494 U.S. at 334.

There was no dispute in *Buie* that the sweep was incidental to arrest. In *Gould*, the Fifth Circuit held an in-home *Buie* protective sweep may be proper in certain situations even though not incident to an arrest. *Gould*, 364 F.3d at 585. The court cited other decisions similarly holding. In *United States v. Patrick*, 959 F.2d 991 (D.C. Cir. 1992), the D.C. Circuit considered a consent entry case and upheld the protective sweep of a bedroom in the apartment which the party authorizing entry had no right to authorize search of. The court stated:

> We first note that, even if Smith could not have consented to the search of Patrick's bedroom, he could, as lessee of the apartment, unquestionably give the police authority to search the rest of it. *Once the police were lawfully on the premises, they were authorized to conduct a protective sweep based on their reasonable belief that one of its inhabitants was trafficking in narcotics.* . . . We think the holding in *Buie*, notwithstanding the search there was conducted pursuant to a warrant and not consent, supports the police search here. Accordingly, the police validly entered the bedroom when they looked through the open door and saw Patrick inside.

*Patrick*, 959 F.2d at 996-97 (emphasis added).

In this case, the officers received felony arrest warrants from Tennessee on January 25, 2005. The officers could have executed the arrest warrants if they had probable cause to believe Defendant was located in the residence. The officers conducted surveillance and had probable cause to believe

7

Defendant was located in the residence. Once inside the residence, Defendant was secured in the master bedroom and taken to the kitchen. The Court made clear in *Buie* that the sweep authority extended until the officers not only completed the arrest but also departed the premises and that the officers were permitted "to take reasonable steps to ensure their safety after, and while making, the arrest." *Buie*, 494 U.S. at 336. The officers also saw another couple in another part of the house, giving the officers the authority to conduct a protective sweep.

As urged by the Government, the officers had the authority to conduct a protective sweep and could have looked in the bathroom where the shotgun was found as well as in the master bedroom where Defendant was first secured. However, it is unclear whether the shotgun was in plain view. Clearly, the cocaine, marijuana, and cutting board located in the top drawer of a dresser in the master bedroom; the $3000 located inside a coat pocket inside the master bedroom; and the items seized from the 1997 Pontiac were not in plain view. The record is also unclear as to whether the large plastic baggie of cocaine located on the top shelf of the master bedroom was in plain view. The Court cannot recommend that the evidence not be excluded based on a finding that the search warrant was not necessary. Nevertheless, the evidence need not be suppressed if another basis, such as a valid search warrant or consent, exists.

**B.     The Search Warrant**

In deciding whether to deny or grant a motion to suppress, the Court should engage in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule applies, *see United States v. Leon*, 468 U.S. 897 (1984); and (2) whether the warrant was supported by probable cause. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). The Court, however, need not address the probable cause issue if the good-faith exception applies. *Illinois v. Gates*, 462 U.S. 213, 264, (1983)

(White, J., concurring); *Satterwhite*, 980 F.2d at 320 (*quoting Gates*).

This case does not raise a novel question of law under the Fourth Amendment. The only question is whether, on the particular facts of this case, the affidavit supporting the search warrant established probable cause to search the residence. We therefore turn to the good-faith issue first.

The Supreme Court in *Leon* held that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Leon*, 468 U.S. at 922-23; *Satterwhite*, 980 F.2d at 320. It is well established that contraband or evidence may not be excluded so long as the officers acting with objective good faith have obtained a search warrant from a magistrate and acted within its scope, though the search warrant ultimately is found to be defective. *See e.g. Leon*, 486 U.S at 918-22 (explaining that because the deterrent effect of the exclusionary rule would not alter the behavior of the judiciary, whose role it is to ensure that search warrants are properly issued, no Fourth Amendment interest is advanced by punishing a police officer who in objective good faith relies upon a defective warrant).

Where a warrant is supported by more than a bare bones affidavit, an officer may rely on the warrant's validity. *Satterwhite*, 980 F.2d at 321; *United States v. Pigrum*, 922 F.2d 249, 252 (5th Cir. 1991). A bare bones affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321; *see United States v. Brown*, 941 F.2d 1300, 1303 n. 1 (5th Cir.) (per curiam) (giving as an example, an affidavit that states the affiant "'has cause to suspect and does believe'" that contraband is located on the premises).

The *Leon* Court stated that in the "ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" *Leon,* 468 U.S. at 921 (*quoting Stone v. Powell*, 428 U.S. at 465, 498 (1976)(Burger's concurring opinion). The good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth. *See Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).

Regardless of whether the search warrant issued by Judge Miller is defective, the officers were entitled to rely upon it with confidence. The initial burden is upon the Defendant to establish that the officers were not protected by the *Leon* good faith exception to the exclusionary rule. *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir. 2002). Defendant has not put forth evidence of falsehood. There is nothing in the affidavit or otherwise to suggest that Judge Miller was misled by information that Hall knew was false outright or because he recklessly disregarded the truth. Hall possessed arrest warrants for Defendant from Tennessee; this would be evidence that Hall had no reason to provide false information to Judge Miller. Additionally, there is no evidence it was not executed within the warrant's scope.

Second, Defendant contends that the warrant was not supported by probable cause because there was no information or allegation of any wrongdoing at the place to be searched or any information concerning contraband therein. Assuming *arguendo* the good faith exception does not apply in this case, requiring the Court to reach the issue of probable cause, the Court finds the affidavit demonstrates there was sufficient probable cause to issue the search warrant.

The affidavit was not a bare bones affidavit. Contrary to Defendant's assessment of the information contained in the officer's affidavit, it clearly establishes a link between illegal activities and the defendant. The affiant, to establish probable cause, provided the reviewing judge pertinent information based upon his and Ranger Womack's surveillance of Defendant's property. Further, the affiant provided the reviewing judge with the indictment information on Defendant from Montgomery County, Tennessee, and with the fact that Defendant was a fugitive from justice, which is a felony offense in the State of Texas. The affidavit also states the affiant observed Kelvin Anderson of Texarkana, Texas standing in front of the residence on one occasion. Although the affidavit does not provide any other information regarding Anderson, Hall's supplemental report filed with the Court provides that Anderson is a known cocaine dealer from the Texarkana area.

Based upon his training and past experience, the affiant also provided the judge with information on individuals who deal in illegal controlled substances and demonstrated the likelihood that Defendant continued to operate his illegal business at his new location. The affiant explained that there was high probability that Defendant was concealing illegal substances, proceeds of drug sales, records of drug transactions, firearms and other objects commonly kept by individuals who manufacture and distribute illegal substances in a location within or around his residence and/or vehicle. In addition, the affiant, along with Ranger Womack, confirmed Defendant's identity, the location of his residence and the registration of his vehicles.

The standard applied by a court for the sufficiency of an affidavit is whether the "totality of the circumstances" stated in the affidavit demonstrates probable cause to search either the premises or the person. *See Illinois v. Gates*, 462 U.S. 213, 238, (1983). "[P]robable cause need not be tantamount to proof beyond a reasonable doubt. . . . Probability is the touchstone." *United States*

*v. Aguirre*, 839 F.2d 854, 857 (5th Cir. 1988)(internal quotation marks and citations omitted). *See Gates*, 462 U.S. at 244 n. 13 ("[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.").

To establish probable cause for a premises search, the information available in the affidavit must show "a fair probability that contraband or evidence of a crime will be found in a particular place." *Id*. at 238. An affidavit supporting a request for a search warrant must give the magistrate a "substantial basis" upon which to conclude that there is such a "fair probability." *Id*. at 238-39. The facts must be judged against an objective standard: "would the facts available to the officer at the moment of . . . the search 'warrant a [person] of reasonable caution in belief' to believe that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

In light of the principles set forth above, when reviewing a magistrate's probable cause determination, the Supreme Court has "repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Gates* at 235 (internal quotations and citations omitted). This Court's role in reviewing the search warrant and affidavit is to ensure that the judicial officer issuing the warrant had "a substantial basis for concluding that probable cause existed." *Id.* at 238-39. As the *Gates* Court noted, "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* at 236 (internal quotations and citations omitted).

In light of the foregoing principles, Hall's affidavit, in combination with the fact that Defendant was a fugitive from justice, provided a substantial basis for Judge Miller's probable cause

determination that contraband or evidence of the commission of a crime would be found in Defendant's residence. The agents relied upon a facially valid search warrant which contains sufficient probable cause for the search. Further, the totality of the circumstances described in the affidavit provided the judge with sufficient information to conclude that there was a fair probability that evidence of a crime would be found at the residence. There is sufficient probable cause established in the affidavit which is the basis for the search warrant.

**C.     Consent**

Finally, Defendant's effort to suppress evidence fails because he voluntarily waived his rights and implicitly consented to the officers' search of his home. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

*Id.* at 444. In *United States v. Cardenas*, 410 F.3d 287 (5th Cir. 2005), the Fifth Circuit reiterated the Supreme Court's holding in *Miranda*:

> There is no talismanic incantation of phrases required to satisfy the strictures of *Miranda*. Nevertheless, the *Miranda* safeguards are most commonly satisfied by giving the defendant the customary *Miranda* warnings: That he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that an attorney will be provided for him if he cannot afford to hire one.

*Id.* at 292 (internal quotations and citations omitted).

In determining the voluntariness of Defendant's waiver of rights and his decision to speak

13

with law enforcement authorities, courts consider the totality of the circumstances. In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the Supreme Court explained that a court's assessment of the totality of the circumstances includes both the characteristics of the accused and the details of the interrogation. *Id.* at 226. The Court instructed:

> Some of the factors taken into account have included the youth of the accused, his lack of education or low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.
>
> ***
>
> The significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. In none of them did the Court [require] the prosecution to prove as part of its initial burden that the defendant knew he had a right to refuse to answer the questions that were put.

*Id*. at 226-27 (internal citations omitted). Likewise, Congress enacted a similar nonexclusive list of factors that trial courts must consider when determining the voluntariness of a confession:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after the arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b). *See also Dickerson v. United States*, 530 U.S. 428, 436 (2000).

In the instant case, after Defendant was placed under arrest and advised of his rights, the investigator asked him if there were any firearms in the house. Defendant indicated to the investigator that there was a gun in the bathroom. Defendant also informed the investigator that there were drugs in a drawer in the bedroom and in the car parked in front of the house. Hall located the shotgun in the bathroom and discovered that it was fully loaded, and upon investigation, discovered that the firearm was stolen. In the bedroom, Hall also located a small baggie of suspected cocaine, a plastic baggie of suspected marijuana, a medium size plastic baggie containing suspected cocaine, a telephone bill in the name of Defendant and a cutting board that had a white powdery substance believed to be cocaine on it. Additionally, Ranger Womack obtained written consent from Defendant to search two storage units at another location.

In waiving his *Miranda* rights and informing the arresting officers of the presence of illegal substances and firearms in his home and vehicle, as well as giving his consent to search the off-site storage units, the defendant effectively and voluntarily cooperated with the police and consented to the search of his home. In sum, Defendant was properly informed and understood his *Miranda* rights. Having understood those rights, he voluntarily and knowingly agreed to waive them.

### VI. Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress (Docket Entry # 18) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report. A party's failure

to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 31st day of May, 2007.**

/s/ Caroline M. Craven
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE