UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | 5:06-CR-27 |
| | § | |
| SALWILLEL THOMAS FIELDS | § | |

**REPORT AND RECOMMENDATION OF**
**THE UNITED STATES MAGISTRATE JUDGE**

**CAME ON TO BE CONSIDERED THIS DAY** Defendant's Supplemental Motion to Suppress (Docket Entry # 57). The Court, after reviewing the motion, the Government's objection, hearing arguments of counsel July 28, 2008 and July 30, 2008 as well as the relevant briefing and arguments on Defendant's original motion to suppress, recommends the supplemental motion to suppress be **DENIED**.

**I. Procedural Background**

Salwillel Fields ("Defendant") is charged in a four count indictment with the offenses of Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1), Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1), and Carrying a Firearm in Furtherance of a Drug Trafficking Offense in violation of 18 U.S.C. § 924(c)(1). These charges arose from evidence seized upon the execution of a search warrant on February 28, 2005, in Bowie County, Texas.

On March 8, 2007, Defendant filed a motion to suppress. After conducting a hearing on May 17, 2007, the undersigned issued a Report and Recommendation, recommending the motion be denied. The District Judge adopted the Report and Recommendation as the findings and conclusions of the Court.

Defendant's previous counsel was allowed to withdraw and new counsel was appointed to represent Defendant. Defendant has now filed a supplemental motion to suppress. The Court conducted a hearing on the supplemental motion on July 28, 2008. The hearing was concluded on July 30, 2008.

## II. Factual Background

By way of background, the Court provides the following information from the Bowie County Sheriff Department's Supplemental Report ("Supplemental Report"), attached as Exhibit B to the Government's response to Defendant's original motion to suppress. On February 17, 2005, Investigator Lance Hall received information from Texas Ranger Jay Womack that Defendant was residing at 749 McAuthor St., Wake Village, Bowie County, Texas. (Supplemental Report at pg. 1). Upon further investigation, Investigator Hall also learned that Defendant was wanted on various drug and weapon indictments out of Montgomery County, Tennessee. (*Id.*). Additionally, Defendant's criminal history report revealed several felony convictions. (*Id.*).

Investigator Hall and Ranger Womack conducted surveillance on the residence for several days. (*Id.*). During this surveillance, Investigator Hall confirmed Defendant's identity, conducted a registration check on the cars that were located at the residence, and confirmed that the cars were in fact registered to Defendant. (*Id.*). On one occasion, Hall observed two males standing in the front yard of the residence. Hall recognized one of the men as Kelvin Anderson, who is "a known cocaine dealer from the Texarkana area." (*Id.*). Hall observed Defendant coming and going in and out of the residence. (*Id.* at pg. 2).

As a result of his surveillance, combined with the fact that Defendant was a fugitive, which is a felony in the state of Texas, on February 27, 2005, Hall prepared a search and arrest warrant for

2

the residence. (*Id.*). Hall presented the search warrant to the 102nd District Judge John Miller for issuance; Judge Miller examined and signed the warrant. (*Id.*).

On February 28, 2005, the search warrant was executed at the residence beginning at approximately 6:43 a.m. (*Id.*). During the execution of the warrant, Defendant was read his *Miranda* warnings and advised Ranger Womack that there was a 12 gauge street sweeper shotgun located in the bathroom of the residence. Defendant further stated there was cocaine in the master bedroom and in a vehicle located outside the residence. (*Id.*).

Hall located the shotgun in the bathroom and discovered that it was fully loaded. "A NCIC & TCIC check revealed that this was a stolen firearm reported by the Cass County, Sheriff Office." (*Id.*). Hall then located in the top drawer of a dresser in the master bedroom a small baggie of suspected cocaine, a plastic baggie of suspected green leafy substance believed to be marijuana, a medium size baggie containing suspected cocaine, a telephone bill in Defendant's name, a cutting board that had a white powdery substance believed to be cocaine on the board, miscellaneous papers, and a Texas fishing license. (*Id.*). Hall then located on the top shelf of the master bedroom closet a large plastic baggie containing a white powdery substance believed to be cocaine. (*Id.*). Ranger Womack located inside a coat pocket inside the master bedroom closet $3000 in United States currency which was taken and turned over to Captain Hall. (*Id.*). Investigator Palmore located in the purse of Ms. Fields a small plastic baggie containing suspected cocaine and a small plastic baggie containing a green leafy substance believed to be marijuana. (*Id.* at pg. 3).

Hall then searched the 1997 Pontiac vehicle that was located outside the residence and found in the glove compartment approximately $4000 in United States currency and approximately two grams of crack cocaine inside a metal container attached to the key ring. The key to the vehicle and

a key to a local storage building were attached to the key ring. (*Id.*). Ranger Womack obtained consent to search from Defendant regarding two storage units. During the search of the storage units, Ranger Womack located a black satchel that contained a large amount of a white powdery substance believed to be cocaine. (*Id.*). All items were transported to the Bowie County Sheriff Office and placed in evidence. (*Id.*).

Defendant was arrested on the Tennessee charges. While being interviewed Defendant agreed to cooperate with authorities and travel back to Tennessee. (*Id.*). Defendant was not charged at that time on the items seized. (*Id.*). On August 23, 2005, Hall received the lab analysis from the Texas Department of Public Safety. The report revealed 423.65 grams of cocaine and 217.50 grams of marijuana. (*Id.*).

### III. Defendant's Supplemental Motion to Suppress

Defendant asserts that the search by officers of his home, vehicle, and the storage unit that contained alleged controlled substances violated his rights pursuant to the 4th Amendment to the United States Constitution in the following ways: (1) the Affidavit for Search Warrant failed to establish probable cause that a crime had been committed at the locations to be searched and the Affidavit failed to provide the Texas State District Judge who issued the search warrant with sufficient evidence to establish a "nexus," or link, between the items sought and the places to be searched, thereby failing to meet the requirements of the 4th Amendment; (2) the "good-faith" exception to the exclusionary rule should not apply given the obvious absence of probable cause in the Affidavit for Search Warrant; (3) assuming the search warrant was invalid, the officers still could not have relied on the arrest warrant from the State of Tennessee to search the entirety of Defendant's home, vehicle, and storage unit, as the search that occurred exceeded the

scope of a "protective sweep" allowable under *Maryland v. Buie*. 494 U.S. 325 (1990); and (4) Defendant did not voluntarily consent to the search of his home, vehicle, or the storage units where controlled substances, a firearm, and currency were allegedly found.

In the supplemental motion, Defendant specifically takes issue with the information in the affidavit that Kelvin Anderson was a "known drug dealer," asserting this misstatement lessens Lance Hall's credibility. Defendant also contests consent and asserts the protective sweep was too broad.

### IV. May 16, 2007 Hearing Testimony

Lance Hall testified at the May 16, 2007 hearing as follows. Hall stated he received Defendant's address from Texas Ranger Jay Womack and performed surveillance for approximately five days in February of 2005. Hall also received information from Tennessee that there were six or seven warrants based on felony indictments for Defendant. Hall completed a seven page affidavit for search warrant. Once receiving the search warrant, Hall and Womack entered Defendant's residence. Tennessee officers were down the street on the day the officers entered the residence.

Hall testified that when he entered the house, Defendant was secured in the master bedroom; the residence was cleared; and Defendant was given his *Miranda* warning. Hall testified that after the *Miranda* warning was given, Defendant waived the *Miranda* rights by choosing to describe the shotgun weapon located in the bathroom and drugs located in the master bedroom. According to Hall, Defendant basically answered the officers' questions, identifying the weapon and the location of drugs. Inside a key ring, the officers located several rocks of cocaine. Paperwork was also found in the residence regarding storage units. Hall testified Defendant was later asked about the storage units, and Defendant agreed in writing to allow a search of the storage units. Hall was present when Defendant signed the consent to search form. After obtaining Defendant's consent, Ranger Womack

and Lt. Larry Parker searched the storage building.

Ranger Womack also testified at the May 16, 2007 hearing as follows. Womack had also conducted surveillance on Defendant's residence. The officers went into the residence relying on the arrest warrants. When the officers entered the house, the officers first secured the house. Defendant was secured as was another couple. Womack read Defendant his *Miranda* rights. The officers told Defendant they had a search warrant for the house and asked Defendant if there was anything he wanted to tell them before they started the search. According to Womack, Defendant then waived those *Miranda* rights by disclosing the location of the shotgun, some cocaine, and some money in the car. Womack did not ask Defendant to sign a waiver of those rights. Later, Defendant signed a consent to search form regarding a storage building. Womack was present when Defendant signed this form. According to Womack, Defendant showed the officers which key on the key ring would unlock the storage unit.

Defendant did not testify at the May 16, 2007 hearing. According to Defendant's testimony at the July 28, 2008 hearing on his supplemental motion to suppress, Defendant's previous attorney did not allow Defendant the opportunity to testify at the earlier hearing because the attorney did not want Defendant to be cross-examined with any prior offenses under the Federal Rules of Evidence. Defendant indicated he wanted to testify regarding some things said at the May 16, 2007 hearing that were not true.

### V. July 28, 2008 Hearing Testimony

At the July 28, 2008 hearing on Defendant's supplemental motion to suppress, Defendant testified as follows. Regarding the incident in February of 2005, Defendant testified he was living in Wake Village, Texas, and he had been living at that residence for approximately four months (Tr.

6

7, 9). He had moved to Texas approximately one year prior to the incident in question. Defendant was not aware of any warrants for his arrest from Tennessee (Tr. 9). The indictments were issued a few days before Defendant was arrested, thus Defendant did not consider himself a "fugitive" from Tennessee. Defendant testified he had a Texas driver's license (Tr. 10).

At the time the officers came to the house, Defendant, Vivian Tittington ("Shorty"), and Toby Smith were present in the house (Tr. 8-9). Shorty and Valderia Fields, Defendant's wife, were living with Plaintiff at the time (Tr. 9). Defendant was in the house only ten or fifteen minutes during the incident (Tr. 21).

Defendant testified as follows regarding the May 16, 2007 testimony of officers Womack and Hall. Defendant acknowledged he was at the residence when the officers arrived. Again, Shorty and Toby Smith were also present (Tr. 11). When the officers came into the house without knocking and after having kicked in the locked door, Defendant was in his bedroom which was located on the other side of the living and dining rooms (Tr. 11-12). Defendant was in bed, and one of the officers had a gun in his face before he knew what was going on (Tr. 14).[1] The officer had Defendant get down, and he handcuffed him (Tr. 15). When everyone was secured, the officer got Plaintiff up; Defendant put his clothes on and was taken into the dining room to sit down (Tr. 15).

According to Defendant, no officer read him his *Miranda* rights (Tr. 16). Defendant was told of the search warrant (Tr. 16), but he was not shown the warrant (Tr. 36). Defendant did not inform the officers of items located in the house even though the officers were asking where the guns were (Tr. 17). Defendant did not indicate that the officers were free to look around (Tr. 17). Defendant

---

[1] Shorty and Toby were in another bedroom (Tr. 14).

7

understood the officers testified under oath differently, but Defendant disputes that testimony as untrue (Tr. 18). Defendant asserts he told his former attorney at the previous suppression hearing that the officers' previous testimony was not true. According to Defendant, he filed a motion himself from jail because his previous attorney did not; Defendant did not know what happened to the motion, asserting his previous attorney "changed it, said something about they tricked me into saying – saying that, and I didn't say that [the officers were free to look around or where certain items were located]." (Tr. 18-19).

Defendant recalled where the items were allegedly found based on the officers' previous testimony, but he testified he was not in the residence when the officers allegedly found the gun or contraband (Tr. 21). The gun was located in a towel closet in the bathroom (Tr. 22). The space was not big enough for a person to hide in there. The gun was not visible from the doorway into the towel closet (Tr. 22).

Defendant also recalled from the officers May 16, 2007 testimony that the cocaine and marijuana were located in the bedroom where Defendant had been sleeping in a dresser drawer (Tr. 22-23). The drawer was not big enough for a person to hide in, and the drawer was closed (Tr. 23). An officer could not have seen the contraband without opening the drawer. The officers also found money in a jacket pocket in the same bedroom closet (Tr. 23-24). Vehicle keys, belonging to Defendant, were also located in the bedroom. In the key chain attached to Defendant's keys, cocaine was located (Tr. 24).

The officers accessed a vehicle with Defendant's keys and located $7,000.00 inside the glove compartment of the vehicle (Tr. 24-25). Defendant testified he had already left the premises in custody (Tr. 25). Again, Defendant testified he did not consent to a search of the house or the car

8

(Tr. 25).

Turning to the storage units, Defendant testified about the consent form he allegedly signed (Tr. 26). At the July 28 hearing, Defendant's attorney showed Defendant a copy of the consent form and asked Defendant what was "fishy about [the] form." (Tr. 27). According to Defendant, when Womack presented Defendant with the form, Womack had the rental agreement and asked Defendant where the rest of the "weed" was. Defendant stated there was no additional "weed" but was then told the officers were getting a search warrant anyway so Defendant might as well sign the consent form (Tr. 27). Defendant signed the form. However, Defendant testified there was only one storage unit, *not two*, listed on the consent form at the time Defendant signed the form (Tr. 27-28).

Defendant testified he had two storage units, but only one, I-7, was listed on the consent form Defendant actually signed. Defendant testified that the storage unit number I-7 had Defendant's motorcycle in it (Tr. 28). Defendant did not consent to K-2. If anything illegal was found in K-2, Defendant testified he did not consent to that storage unit being searched (Tr. 29). Although Defendant's initials were on the form, the initials were not placed on the form in Defendant's presence. When he signed the form, Womack and maybe two additional persons were present (Tr. 29). There was no coercion, but the only unit listed on the form was the I-7 storage unit (Tr. 29-30).

Finally, Defendant testified regarding Kelvin Anderson (Tr. 31). Kelvin Anderson is Defendant's cousin (Defendant's grandfather's sister's child)(Tr. 30-31). Defendant has known Mr. Anderson about one or two years at the time of the incident (Tr. 31-32). Although Mr. Anderson was referred to on the Affidavit for Search Warrant as a "known drug dealer," Defendant testified Mr. Anderson was working for the sheriff's department at the time, and he is currently in Iraq as a reservist (Tr. 31-32). He was not a drug dealer according to Defendant (Tr. 31).

9

On cross examination, Defendant agreed there was an outstanding felony warrant for his arrest. He also had pending criminal charges against him in Tennessee (Tr. 36). Defendant was transported back to Tennessee the following day. Defendant was supposed to cooperate with the Tennessee authorities, but he did not complete cooperation with the authorities in Tennessee (Tr. 37).

Lance Hall also testified at the July 28, 2008 hearing. Hall testified regarding whether Defendant was given his *Miranda* rights (Tr. 46). According to Hall, Defendant was located in his bedroom on the east end of the house (Tr. 47). Defendant was secured and brought into the dining room/kitchen area. Shorty and another individual were also located in the residence in the bedrooms in the west end of the house (Tr. 51). They were secured in the living room.

Hall witnessed Womack read Defendant his *Miranda* rights (Tr. 47, 49). Defendant then agreed to talk with and cooperate with the officers (Tr. 48). Hall testified no one was yelling "where are the guns." (Tr. 48). After Defendant was secured and read his *Miranda* rights, Defendant told the officers about the drugs and the gun; he did not mention the currency (Tr. 48). Hall was involved in the search of the house (Tr. 49).

After Defendant told the officers the gun was located in the towel closet, Hall located the gun in the bathroom in a closet-type hamper with a door (two feet tall) (Tr. 53). The gun was in plain sight once the door to the closed closet was opened. The officers had to open the door to see the gun (Tr. 53). There were no shelves or towels blocking the view of the gun, and nothing was removed from the closet before the photograph was taken. (Government's Exhibit 2).

The officers also found cocaine, marijuana, and some money in the bedroom (Tr. 54). Cocaine and possibly marijuana were located in a couple of different dresser drawers, and some was located in the closet (Tr. 54). Currency was found in the clothes in the closet (Tr. 54-55). The

10

dresser drawers could have been partially open, but the officers had to open the drawers to find the cocaine based on Defendant's information (Tr. 55). Defendant provided the officers some keys to a vehicle which had been lying on the kitchen table (Tr. 56-57). The officers asked Defendant which of the two vehicles at the residence went with the keys, and Defendant informed them of the vehicle where currency was located (Tr. 57).

Hall has been an officer for 22 years (Tr. 47). Hall has not been disciplined for any misconduct on the job (Tr. 55). Hall chose to leave the police force. He is employed at the district attorney's office and the probation office (Tr. 55-56).

Ranger Womack also testified at the July 28, 2008 hearing. Womack recalls advising Defendant of his *Miranda* rights (Tr. 59). After he had secured the house and located the other two individuals in the house, Defendant was brought into the dining room where Womack read Defendant his *Miranda* rights (Tr. 59). Womack testified Hall was present when Defendant was read his *Miranda* rights, thereby eliminating the need for a *Miranda* waiver form (Tr. 65-66). After Defendant was read his *Miranda* rights, the officers asked Defendant if there was anything in the house. Defendants then told the officers where things were located (Tr. 67-68).

Womack further testified regarding the storage units consent to search form. Womack had Defendant complete a consent form to search the storage units (Tr. 61). Womack and Defendant signed the form (Tr. 61-62). Officer Donnie Robison from the Clarksville, Tennessee Police Department witnessed Defendant signing the form (Tr. 62). Hall was not present when the consent form was signed at the office.

Womack filled out the top portion of the form, including Defendant's name and both storage units (Tr. 62). There is a scratched-out portion on the form with the number 72 on it, and

Womack's initials are next to the scratched-out number (Tr. 62-63). Womack testified the scratched-out portion of the form was initially incorrect, but both I-7 and K-2 storage units were included on the form signed by Defendant (Tr. 63). Womack did not give the Defendant a consent form to sign with only one storage unit nor did he later add another storage unit after Defendant signed the form (Tr. 63). The form was never modified after Defendant signed it (Tr. 69). Womack read the form to Defendant, and Defendant read the form himself (Tr. 63). Defendant also gave verbal consent (Tr. 70-71). Based on Defendant's consent, the two storage units were searched (Tr. 64). In one of the storage units, the officers located cocaine in a black satchel in an old t.v. cabinet described by Defendant (Tr. 64). The other storage unit had a motorcycle in it (Tr. 69).

### VI. Discussion

**A.      May 31, 2007 Report and Recommendation**

On May 31, 2007, the undersigned issued a Report and Recommendation, recommending Defendant's original motion to suppress be denied. Defendant failed to file objections to the May 31, 2007 report, and the report was adopted by the District Judge as the findings and conclusions of the Court. After first considering, pursuant to *Maryland v. Buie*, 494 U.S. 325 (1990), whether a search warrant was even necessary in this case, the Court declined to find the evidence should not be excluded based on a finding that the search warrant was not necessary. Instead, the Court considered whether another basis, such as a valid search warrant or consent, existed so that the evidence need not be suppressed.

The Court then engaged in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule applies, *see United States v. Leon*, 468 U.S. 897 (1984); and (2) whether the warrant was supported by probable cause. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir.

1992). The Court noted that it did not need to address the probable cause issue if the good-faith exception applies. *Illinois v. Gates*, 462 U.S. 213, 264, (1983) (White, J., concurring); *Satterwhite*, 980 F.2d at 320 (*quoting Gates*).

The Court noted this case does not raise a novel question of law under the Fourth Amendment. Rather, the question before the Court was whether, on the particular facts of this case, the affidavit supporting the search warrant established probable cause to search the residence. The Court first found the *Leon* good-faith exception applied here. The Court then assumed, *arguendo,* the good-faith exception did not apply in this case, requiring the Court to reach the issue of probable cause, and found the affidavit demonstrated there was sufficient probable cause to issue the search warrant. Finally, the Court held Defendant's effort to suppress evidence failed because he voluntarily waived his rights and implicitly consented to the officers' search of his home.

**B.**     **Defendant's Supplemental Motion to Suppress**

As stated above, in finding the good-faith exception applied in this case, the undersigned found, in the May 31, 2007 Report and Recommendation, that Lance Hall's Affidavit for Search Warrant was not a "bare bones" affidavit. Even though Defendant did not file objections to the Court's May 31, 2007 Report and Recommendation, barring Defendant from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice, *see Thomas v. Arn*, 474 U.S. 140, 148 (1985), Defendant has now filed a supplemental motion wherein he disagrees with the Court's determination that the Affidavit for Search Warrant contains sufficient facts to support probable cause and the issuance of a search warrant. Specifically, Defendant takes issue with the Court's finding that the information contained in Lance Hall's

affidavit established a link between illegal activities and Defendant for the following reasons: (1) Defendant was present at his home, as were vehicles registered to him, based on the affiant's and Ranger Womack's surveillance of Defendant's property; (2) the affiant provided the reviewing judge with the indictment information on Defendant from Montgomery County, Tennessee, and with the fact that Defendant was a fugitive from justice, which is a felony offense in the State of Texas; (3) the affiant observed Kelvin Anderson of Texarkana, Texas standing in front of the residence on one occasion;[2] and (4) the affiant had experience investigating narcotics cases and set forth what often happens in such cases.

In his supplemental motion to suppress, Defendant raises the following "new" arguments. According to Defendant, the fact that Defendant had been indicted in Tennessee, or arrest warrants from Tennessee existed, did not indicate that Defendant was a "fugitive from justice" in the State of Texas. Defendant points to testimony from the supplemental hearing that the Tennessee indictments and arrest warrants were not issued until just a few days before Defendant was arrested in Texas.

Defendant also takes issue with the prior testimony from the officers that Kelvin Anderson was a "known cocaine dealer from the Texarkana area." At the supplemental hearing, Defendant testified that Mr. Anderson was his cousin and had worked for the Bowie County Sheriff's office as a jailer and was currently serving in the U.S. armed forces in Iraq as a member of a reserve unit. Finally, Defendant submits that Hall's previous experience as to what happens in other narcotics cases is irrelevant to the probably cause inquiry in this case.

---

[2] Although the affidavit does not provide any other information regarding Anderson, Hall's supplemental report filed with the Court provides that Anderson is a known cocaine dealer from the Texarkana area.

The Court need not re-address the issue of whether the Affidavit for Search Warrant contains sufficient facts to support probable cause and the issuance of a search warrant. Not only did Defendant fail to object to the undersigned's recommended findings on the probable cause issue in May of 2007, but the undersigned also found that the *Leon* good-faith exception applied in this case even assuming that the affidavit on which the warrant was based was insufficient to establish probable cause.

The Supreme Court in *Leon* held that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *Leon*, 468 U.S. at 922-23; *Satterwhite*, 980 F.2d at 320. This rule does not apply where the warrant is based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (*quoting Brown v. Illinois*, 422 U.S. 590, 610-11(1975) (Powell, J., concurring in part)); *see United States v. Craig*, 861 F.2d 818, 821(5th Cir. 1988) (referring to this type of affidavit as a "bare bones" affidavit).

As argued in his original motion to suppress, Defendant asserts the Affidavit for Search Warrant is a "bare bones" affidavit, and the good-faith exception should not apply. A "bare bones" affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Satterwhite*, 980 F.2d at 321; *see United States v. Brown*, 941 F.2d 1300, 1303 n. 1 (5th Cir.) (per curiam). Examples of "bare bones" affidavits include one that states the affiant "has cause to suspect and does believe" that liquor illegally imported is located on certain premises, *Nathanson v. United States*, 290 U.S. 41 (1933), and one where the affiants "have received reliable information from a credible person and do

believe" that heroin is stored in a home, *Aguilar v. Texas*, 378 U.S. 108 (1964).

Here, Hall's affidavit is based upon more than just conclusory statements. The Court is not convinced Hall's affidavit in this case is "bare bones." What is more, the Supreme Court in *Leon* stated that in the "ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. '[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law.'" *Leon,* 468 U.S. at 921 (*quoting Stone v. Powell*, 428 U.S. at 465, 498 (1976)(Burger's concurring opinion). However, according to the Supreme Court, the good-faith exception to the exclusionary rule does not apply if the warrant affidavit contains a false statement that was made intentionally or with reckless disregard for its truth. *See Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).

Here, there is no evidence that the affidavit contains a false statement that was made intentionally or with reckless disregard for its truth. Regardless of whether the search warrant issued by Judge Miller was defective, the Court finds the officers were entitled to rely upon it with confidence. In sum, the Court finds the good-faith exception applies in this case.

Finally, the Court considers Defendant's argument that he did not voluntarily consent to the search of his home, his vehicle, or the storage unit where controlled substances were allegedly found. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.

*Id.* at 444.

In determining the voluntariness of Defendant's waiver of rights and his decision to speak with law enforcement authorities, courts consider the totality of the circumstances. In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the Supreme Court explained that a court's assessment of the totality of the circumstances includes both the characteristics of the accused and the details of the interrogation. *Id.* at 226. The Court instructed:

> Some of the factors taken into account have included the youth of the accused, his lack of education or low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

\* \* \*

> The significant fact about all of these decisions is that none of them turned on the presence or absence of a single controlling criterion; each reflected a careful scrutiny of all the surrounding circumstances. In none of them did the Court [require] the prosecution to prove as part of its initial burden that the defendant knew he had a right to refuse to answer the questions that were put.

*Id*. at 226-27 (internal citations omitted). Likewise, Congress enacted a similar nonexclusive list of factors that trial courts must consider when determining the voluntariness of a confession:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after the arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b). *See also Dickerson v. United States*, 530 U.S. 428, 436 (2000).

In this case, Hall testified that Defendant was located in his bedroom, secured, and brought into the dining room/kitchen area where Hall witnessed Womack read Defendant his *Miranda* rights (Tr. 47, 49). Defendant then agreed to talk with and cooperate with the officers (Tr. 48). After Defendant was secured and read his *Miranda* rights, Defendant told the officers about the drugs and the gun; he did not mention the currency (Tr. 48). According to Hall, Defendant told the officers a gun was located in the towel closet, and Hall located the gun in the bathroom in a closet-type hamper with a door (two feet tall) (Tr. 53). The officers also found cocaine, marijuana, and some money in the bedroom (Tr. 54). Cocaine and possibly marijuana were located in a couple of different dresser drawers, and some was located in the closet (Tr. 54). Defendant also provided the officers some keys to a vehicle which had been lying on the kitchen table (Tr. 56-57). Defendant informed the officers of the vehicle where currency was located (Tr. 57).

Ranger Womack also testified at the July 28, 2008 hearing. After Defendant had secured the house and located the other two individuals in the house, Defendant was brought into the dining room where Womack read Defendant his *Miranda* rights (Tr. 59). Womack testified Hall was present when Defendant was read his *Miranda* rights (Tr. 65-66). After Defendant was read his *Miranda* rights, the officers asked Defendant if there was anything in the house. Defendant then told the officers where things were located (Tr. 67-68).

Womack further testified regarding the storage units consent to search form. Womack had Defendant complete a consent form to search the storage units (Tr. 61). Womack and Defendant signed the form (Tr. 61-62). Another officer from the Clarksville, Tennessee Police Department witnessed Defendant signing the form (Tr. 62). Womack's initials are next to a scratched-out

number (Tr. 62-63). Womack testified the scratched-out portion of the form was initially incorrect, but both I-7 and K-2 storage units were included on the form signed by Defendant (Tr. 63). According to Womack, the form was never modified after Defendant signed it (Tr. 69). Womack read the form to Defendant, and Defendant read the form himself (Tr. 63). Defendant also gave verbal consent (Tr. 70-71). Based on Defendant's consent, the two storage units were searched (Tr. 64). In one of the storage units, the officers located cocaine in a black satchel in an old t.v. cabinet described by Defendant (Tr. 64).

According to Defendant, no officer ever read him his *Miranda* rights nor did he ever inform the officers of items located in the house (Tr. 16-17). Defendant testified at the supplemental hearing that he did not indicate that the officers were free to look around the house (Tr. 17). Not only is Defendant asking the Court to believe, contrary to the consistent testimony of Hall and Womack, that he never consented to the search of his home and vehicle, but Defendant also asks the Court to believe Womack and/or another officer from Tennessee filled out the storage unit consent form with only the I-7 storage unit and then doctored the form by adding the K-2 unit. The Court is unwilling to accept Defendant's testimony and instead accepts Hall and Womack's versions of the facts as true.

In waiving his *Miranda* rights and informing the arresting officers of the presence of illegal substances and firearms in his home and vehicle, as well as giving his consent to search the off-site storage units, Defendant effectively and voluntarily cooperated with the police and consented to the searches. Defendant was properly informed and understood his *Miranda* rights. Having understood those rights, he voluntarily and knowingly agreed to waive them. Defendant's effort to suppress evidence fails because he voluntarily waived his rights and consented to the officers' search of his

19

home, vehicles, and storage units.[3]

## VII. Recommendation

Based on the foregoing, it is hereby **RECOMMENDED** that Defendant's Supplemental Motion to Suppress (Docket Entry # 57) be **DENIED.**

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 29th day of September, 2008.**

*Caroline M. Craven*
CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE

---

[3] Given this finding, the Court does not need to consider Defendant's assertion that the searching of the towel closet, dresser, and the clothes in Defendant's closet were not within the allowed scope of a protective sweep.